Please call the next case. Springfield Urban League v. Workers' Compensation Comm'n Case No. 4-12-0219. May it please the Court, Counsel, Ken Bima, I represent the Springfield Urban League. I know you've read the briefs and you're familiar with the incident in question. It involved a petitioner walking across one of these weather mats, weather rugs, and she fell. Now, when you analyze that and you look at the arising out of issue, we look at the risk of injury and we categorize that into the three types of risk. We take a look to see if the risk was something that was distinctly associated with her employment, was the risk personal to the petitioner, or was it a neutral risk, which most risks are. At the time of arbitration, evidence was put on. Respondent, we called three witnesses. Petitioner called a witness. And there was a lot of discussion and debate as to whether or not this was a personal risk. Was this idiopathic? And for good reason. As you know, petitioner at the time of the injury was 77 years old. She had undergone bilateral hip replacement surgery. There was documentation a month before this incident where she saw a Dr. Mack who had been treating her for degenerative problems with her back. And she had difficulty getting around. She had animals. There was documentation. She had difficulty moving around feeding the animals. So at the time of arbitration, we put on the witnesses. Petitioner put on her witnesses. And we did not prevail on the personal risk, proving that this was an idiopathic fall. I come before you today mindful that I'm up against the manifest way to the evidence on this personal risk issue. I'm not going to win the personal risk issue. The problem I have is that when you look at the lower tribunals, none of them addressed the neutral risk. None of them addressed what I think is the issue. Was petitioner exposed to a greater risk of tripping over the weathered rugged than that of the general public? That's the heart of our argument that nowhere is this neutral risk addressed. So I'm in front of you on a manifest way to the evidence burden, but at the same time, no evidence was submitted by any of the lower tribunals on this issue. It wasn't addressed. Let me ask you this. I understand your argument. If this is some, shall we say, built-in defect or problem inherent in the area where the employee is going in and out of, you can make the logical argument, hey, look, this is not a greater risk. I mean, everybody who uses this is going to be subject to that. And I think maybe we're going off on a tangent. I don't think the commission even talked about this mat being defective. It appears that the mat was bunched up or in a way that presented a dangerous condition. So how do you respond to the argument that special hazards at that time, which the employee encounters as a result of having to use it, satisfies the arising of it? You know, I've looked at this. I mean, a weathered rug mat. There were pictures. There was no testimony that this mat was defective or hazardous. There was no testimony that the mat, the rubber strips were defective and off causing the issue. Wasn't it bunched up? There had to be some evidence in the record as to that. Well, I mean, the evidence, there was a dispute, right? The respondents, witnesses, all three of them testified that the mat was flat. So you've got to take it as bunched up. That's the lay of the land for you. Correct. We've got to take it as bunched up, but what cost it? There's no testimony. Was it petitioners, the fact that she's had these preexisting conditions that make it difficult to walk? It's described as she walks with a shovel. Did that cause this risk? Did this cause this bunching up? You know, there's no evidence to say that, like I said, this was a hazardous mat. It wasn't defective in any way. It was bunched up. That's what I'm stuck with. But it wouldn't have to be inherently hazardous for her to recover, correct? I think she has to prove that this floor mat, it wasn't defective. I don't think there's any evidence. But would you concede that if it was bunched up, it was in that condition, and nobody did anything about it and somebody falls, that's different than having it inherently defective? I guess when you say nobody did anything about it, I mean there was testimony that she was in the front of the line. There was testimony from response witnesses that the mat was not bunched up. We had Tammy McClickpock was the first one who was in front of her. She testified that the mat wasn't bunched up. So I think you've got to get to that greater risk analysis. And when you look at that analysis, you look at the location. Petitioner was here for training. She'd been here a few times in the past for training. But this wasn't something that she encountered all the time. The location, St. Caprini School. This is where the Head Start program is for the Springfield Urban League. The testimony was 141 children attend school at this facility. The location was the main door. They called it the parent door, the staff door. They'd go out and in picking up their children the staff would come into. When you dissect it and you analyze this risk, it's the same risk that we all encounter. Cold weather states more than others. But this is a weathered rutment. We all encountered the same risk of walking and traversing the... Well, hang on, hang on. Because you've got to get... I mean, what the question is concentrating more on the special hazard part of it. And you've got a mat. There's testimony that it's bunched up. And there's testimony it was bunched up not by the claimant, but that it was in that condition prior to the claimant encountering it. So that being testimony that is out there, and the Commission was free to view that testimony and accept that testimony. Now you've got a bunched up mat in an area where the claimant was required to travel. Why isn't this a case similar to Litchfield, where that neutral risk is that particular element is satisfied per Litchfield, that there was a special risk or hazard present? I would take issue with the testimony that there was evidence and testimony that she did not cause this bunch up in the mat. I think the only... When you look at her testimony, she didn't see it. She didn't know which foot hit it. She didn't see the bunched up mat. We have respondent's witness, Tammy McKittrock, who was before her saying that, you know, it was flat when she walked on it. I think the testimony that we have is her witness, who said that she saw it bunched up before she fell over it. But there was no testimony that she didn't cause it or their witness was aware of somebody else causing the mat to be bunched up. Okay, this witness that said that she saw that it was bunched up before the claimant fell over it, how could that condition have been caused by the claimant? If you look at, you know, the inference would be petitioner, you know, she shuffles her feet. She has preexisting problems. There was accommodations made for her preexisting issues with walking. The bus was parked in a certain location so she wouldn't have to walk over to it. She wasn't required to go upstairs. So I think there's a strong inference that this bunched up mat. I don't know if you're answering the question. The inference is, okay, let's assume everything you say is true for the sake of the arguendo as it were. Didn't you just concede that some witness said it was bunched up before the claimant encountered it? If that's the case, what difference does it make what the claimant did or didn't do when she got to the mat? If I go back to later risk in the general public. Answer my question before you go off on a tangent. Okay. Was there a witness that said the mat was or was not bunched up before the claimant encountered it? Yes, there was. It was bunched up? There was one, yes. There witness testified of it. So then what is how the claimant walks has to do with anything? I mean, I think it all goes back to greater risk in the general public. And if this weathered mat, is there anything different between this risk of walking on this weathered rug versus any other? If she caused it to be bunched up, absolutely. If she caused it to be bunched up. You want us to reverse the commission on a manifest weight, drawing an inference that because she shuffles her feet, she might have bunched the rug up? But I don't think. I mean, are you serious about that? Well, the testimony is already there that it was already bunched up before she got there. I don't think the commission addressed the greater risk issue. So, I mean, I don't think. I don't see where the greater risk enters into this. If it's our contention, it's a neutral risk. Why is it a neutral risk if it's actually bunched up? There's nothing unique about this mat. About bunching up? There's nothing unique about bunching up? I mean, I think it. How is this different than any other weathered rug that the general public would address? They're not bunched up. Well, it could be bunched up. It's the same risk. Someone said it was. What's that? Someone actually testified that it was. But the general public would have the same risk of bunching up the rug. Let me ask you a question. Let's try this one. So, you've got a sidewalk, and people walk on sidewalks all the time. But there's an eight-inch hole in the sidewalk. Now, people in the general public manage to make it over. But an employee who has to cross that sidewalk trips and falls on it. Your theory would be that because the general public could get over it without falling in, even though we know it's a defect, that they weren't exposed to any risk greater than the general public. I think the distinction that I have and the difference that I have is this isn't a defect. This isn't a hazardous condition. This was a flat mat, and this mat was not defective or hazardous like a sidewalk would be. But it became hazardous when it got bunched up. And it would be the same potential of being bunched up that the general might sue also. The point is that it may not be inherently defective. We started out this, but it ended up in a hazardous condition before the claimant stepped onto it. We can agree with the facts, right? Yes. Now, you can argue the inferences, but that are the facts according to what you told me. I guess my position would be this weathered rug mat was not defective. It didn't have, like I said, there's no test for it. It didn't have to be defective. I suggest to you you're up. It doesn't have to be inherently defective. If it ends up in a dangerous defective condition where it's bunched up or kinked up, somebody could fall at it. Would you compare the chance and the opportunity of that mat to be bunched up similar to what other regular weathered mats would? It's a risk. It's not a natural accumulation case. Is this the same risk, though, of a mat? No, it's not a natural accumulation case. This isn't a situation where the mat was merely wet because people track water in from the outside. This is a situation where the mat is bunched up and she trips on the bunched up mat. And how would this be different than if she was walking to court to pay a traffic fine and she walked on the mat and it bunched up and she fell? Is there any difference about this weathered rug mat? Whoa, whoa, whoa. Slow down. It was bunched up before she fell. It was bunched up before she fell. Correct. But was there anything defective that caused it to be bunched up? It's not defective. Does there have to be? I think when you compare the risk, I mean, would the parents encounter that same risk? I mean, this isn't a defective rug or mat. This isn't a divot in the sidewalk. Would people walking down the sidewalk with my 8-inch hole encounter the same risk? That I would agree. That's a defective sidewalk. There is a defect in it. Well, the commission is saying a bunched up mat that someone has to traverse to get out of a building is a hazard. But there was no testimony that this mat was bunched up before. Oh, yes, there is. There's a person that says it was bunched up before she fell. Well, right before because our witness walked on it and didn't fall over the bunched up mat. She testified. So I think the evidence can be, you know, it was flat. It was fine. This isn't a defective mat. Petitioner, it's the same as petitioner walking in over any other going to a restaurant with a weathered mat. You know? Well, I submit to you if somebody walks into a restaurant and the mat is bunched up and they trip on it, they're going to file a lawsuit. But I don't think the evidence shows that this mat was bunched up throughout the meeting. The mat was bunched up. It doesn't have to be bunched up throughout the meeting. It has to be bunched up before she falls. I mean, how long does it have to be there before it becomes a hazard? I would ask you to reverse for the reasons stated. All right. Okay. Thank you, Mr. Bima. Mr. Ritchie, is it? Yes, it's Ritchie. Ritchie, you may respond. Yes. May it please the Court. Good afternoon, Your Honor. Good afternoon, Counsel. I'm Andrew Ritchie, and I do represent Task Force. The respondent mentions that she had this prior treatment to the leg, and that's not true. She had prior treatment to the hip and the back. I don't think we're going to get hung up on that. Frankly, I don't understand what that has to do with anything. Get to whether there's a hazard or not. Well, I would agree with you that the kink in the rug was a special hazard. It's not a matter of whether the mat itself is a hazard. It's a matter of whether the kink in the rug is a hazard. What if she caused that? Well, she didn't. That was a factual determination by the Commission, and the Commission determined that the mat was kinked up in the middle prior to the petitioner walking on it. Prior to the petitioner walking on the mat? Yes, that is correct. Okay. And the respondent's three witnesses, well, Whereabouts was this rising, this bunched up in the mat? Do you know? Was it right after the, beyond the edge of the mat? It was in the middle of the mat. In the middle of the mat. Yes, that is correct, Your Honor. So before she even got on the mat, there was, you're saying the testimony that there was a bunching up of the mat? Yes, that is the testimony of the petitioner, and the testimony of Ms. Lachansky, who was the petitioner's witness. Now, I know respondent wants to rely on the testimony of Ms. McKittrick, who was walking in front of the petitioner, but the Commission rejected Ms. McKittrick's testimony, and the reason they rejected her testimony was because it wasn't credible. She made, or she gave a recorded statement prior to the arbitration where she said she never even noticed the condition of the mat. Then in arbitration, she completely changed her story and says she saw the mat and said it was flat the whole time, and the Commission was right in rejecting that testimony. And Ms. McKittrick contradicted herself again when she said in the pre-recorded, in the recorded statement that the, there were no other people around, whereas at the arbitration, or rather, in the recorded statement, she said that there was a steady flow of people around, whereas at the arbitration, she testified that there was nobody else around, so she completely contradicted herself again. So the Commission was correct in completely rejecting Ms. McKittrick's testimony because it just wasn't accurate at all. So what do you make of your opponent's argument that this is not really a greater risk to the public? He's saying that the evidence was there's a number of people walking in and out of this building that day over the same rug. They didn't fall. So where's the risk? Well, she doesn't have to compare her risk to the risk of other employees who are walking on that same mat. She has to compare her risk to the risk of members of the general public. Right, he's saying, well, hey, there'll be nobody else in the general public going in and out that day fell on this rug. Well, how do you respond to that argument? The argument that there could be other rugs elsewhere? No, that rug. He's saying, what's the greater risk? Everybody else, dozens of people walking over that rug all day long, nobody else fell. Well, I don't know if the rug was kinked when there were schoolchildren there. All we know is the rug was kinked up at this meeting. I think it does present a special risk where there's 200 people attending this meeting and all of them have to leave out of the same exit. So they're all traversing the same hallway, going over the same rug, and there's a special risk when you have 200 people leaving down the same highway that the rug would get bunched up and people are walking over it. And I think that's a greater risk than a member of the general public. I know that this was sort of the parents' door, and parents would sometimes use the store, but there's no testimony indicating that there's this many people traversing this hallway at the same time. I would also... So your theory, because I've always had problems with the fact that these are just judicial notice cases anyway, nobody ever puts on evidence as to what risks are statistically of the general public. I mean, we all pull it out of the air, let's be honest. We do. And the fact is your argument now is starting to make some sense. You're saying that she is an employee, she's in this mandatory meeting, that there are this number of people, quantifiably, going through at one time over a mat, and that that many people going over a mat over a short period of time, the mat's going to get bunched up. That's correct, Your Honor. Whereas the general public doesn't get into a herd going down the hallway with a bunching up of mats. That's what I think you're saying. Yeah, that's correct, Your Honor. And that's your theory. That's why it's a risk greater than the general public, rising out of and in the course of her employment. Yes, I would say if you were to find that it's a neutral risk, if you are to find that it's a neutral risk, I would say it is a risk that's greater than the risk of the general public because of that, because there is a greater risk at this mandatory employee meeting. Because they all leave at the same time, is that what you're saying? Yes, that's correct. They were forbidden to leave the other exits. And I know that was another contention at arbitration of whether that you could leave out another exit. Both McKister and Ms. Lachansky testified that that was the only exit they were allowed to leave out of because the fire alarms would go out if they left out of the other doors. I know one of the respondents' witnesses, Ms. Glover, said there were two exits they could leave out of. And then the other two witnesses, Ms. McKittrick and Ms. Leahy, testified there were three exits they could leave out of. So even respondents' witnesses couldn't even agree over how many exits there were that they could leave out of. So I think the arbitrator was also correct in giving more credibility to the petitioner and her witness who both agreed that there was only one exit they could leave out of. And the respondent also mentioned about, you know, there's weather rugs in other areas. The petitioner doesn't need to prove that this hazard of the rug being kinked is a greater risk than other rugs being kinked. We would agree. You don't need to go down that hallway, as you say, or highway. You didn't put on any evidence that a great quantity of people traversing that rug bunches up rugs. That's what the arbitrator found. Based on what? Well, it was based on – Well, there was numerous testimony over how many people were leaving out at once. There was actually a dispute over whether – But you didn't have an expert, a rug expert, a pouring expert, a friction expert. A rug expert? A rug expert? No, that's correct. We didn't have a rug expert, but there was numerous testimony of how many people were leaving at once, how many people were in the hallway at once. The petitioner and her witness testified that there were, like, two or three. And, I mean, that seems clear because Ms. McKittrick testified she was walking. So the arbitrator just took judicial notice that rugs bunch up, and they bunch up for reasons of people traversing rugs, and the greater number of people traversing a rug, the more likely a rug is to bunch up. Well, I mean, the arbitrator found that the rug was – became bunched up somewhere when people were walking on it. I don't think the petitioner has to – Well, I guess the arbitrator speculated, right? Well, I suppose there was – There's no evidence. I suppose he made an inference based on the testimony of how many people were traversing it, but I don't think the petitioner has to – Yeah, but there's no link up there. There's no evidence. Well, there is evidence. I mean, there's evidence – Evidence only that there are a number of people traversing over a rug. But where is the evidence that the number of people that traverse over a rug bunch up a rug? Well, I mean, I guess you have to – I guess the arbitrator inferred that the rug had to have been bunched up somehow, and there was no testimony that the rug was – Well, the arbitrator inferred that. I thought there was a witness that said it was bunched up. There was no inference. Didn't you tell us there was a witness that said it was bunched up before the claimant stepped out to it? Well, yes, that's correct. We don't know how. Everybody agrees with that. What difference does it make? Exactly. See, that's what I'm stating, is that I don't believe that it makes a difference. I don't believe that the petitioner has to prove how the rug was bunched up. Just like if someone fell in a hole, they don't have to prove how the hole got there. They don't have to prove that they weren't the ones who made the hole. How do you prove that – assume that it's true, that it's bunched up? You've got evidence that said it was bunched up before she fell. How is that a risk greater than the general public? What's a risk greater than the general public? Because I don't – the only other people other than – there's testimony that this exit was used by employees, that this was the exit that employees had to use. Now, there was some testimony that this was a parent's exit. And, you know, I don't – I suppose that parents would pick up their kids. Remember, this is a small school. There's only like eight classrooms. So we're not talking about like a lot of – a huge amount of traffic going across this hallway. And we're – there's no testimony that this kink is like permanent. There's no testimony that this is somehow like a defect in the floor. I mean, that this rug is like – But your argument is that the general public doesn't have to traverse down that hall on that map, okay, in the herd-like atmosphere that the employee was required to go down that hallway. Yes, that's correct. And members of the – and most members of the general public wouldn't have to traverse the hallway. And this is a school. We're not talking about like, you know, people can't just like enter a school if they don't have a kid at the school. I mean, that would – So in light of that cogent analysis, do you have any further arguments to make on that point? Well, I would just like to point out that respondent mentioned the case of a restaurant, you know, a mapping restaurant. That was the Tinley Park Hotel case that we cited where there was an employee at a restaurant and she did fall on a defect at the carpet. And the commission in that case in the appellate court found that there was a dispute in the testimony and the commission was correct in finding that there was enough evidence for the commission to find that it was the defect in the carpeting that caused the employee in that case to fall rather than, you know, her just tripping on herself like the respondent said. I think we can agree. If somebody trips over their own feet, whether they've got to traverse the thing 50 times a day directed by the employee, there's not going to be a recovery. Here you have documented, you know, evidence, testimonial evidence, the carpet was bunched up, the rug was bunched up. You don't need to go any further than that. That's correct, Your Honor. Thank you. Thank you, Your Honor. Just briefly, the other issue concerned the fee schedule in the medical bills. And this is a common problem that we're seeing now in front of the commission. You think it's fair to argue that in rebuttal? You didn't argue it in your main argument? Where does he get to respond to it? That's fine if you don't want me to argue it. I just wanted to not forget that that's an issue. Finish your statement. It's a common issue. I just think it's a problem and I think most practitioners struggle with this. I know the arbitrators struggle with procedurally how to go about the trial. Some arbitrators will want both sides to submit what they propose the fee schedule is. Other arbitrators will do like this arbitrator did and just put the bills in and, you know, you have to determine what the fee schedule is. And it's not an easy task to run the codes for the fee schedule. It's much more sophisticated than one would believe. So, thank you. Okay, thank you, counsel, both for your arguments in this matter. We've taken our advisement that this position shall issue.